THE STATE OF CONNECTICUT vs. THE SUFFIELD AND THOMPSONVILLE BRIDGE COMPANY ET AL.

* Third Judicial District, New Haven, June Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

By the defendant's charter (10 Special Laws, p. 1206) it was authorized to construct a toll-bridge across the Connecticut River, between Enfield and Suffield. Section 4 of the charter required it to pay to the owners of prior franchises, which would be destroyed by the construction of said bridge, their damages. Sections 8 and 9 authorized the towns of Enfield and Suffield to convert the bridge to be built by the defendant into a public highway, paying to the defendant "as damages the value of said bridge and appurtenant property, and also such amounts as have been paid as damages to" such prior owners, "but no damages shall be allowed to the company for the franchise created by this resolution." By chapter 258 of the Public Acts of 1907, the State declared its purpose to take the defendant's toll-bridge and establish it as a free public highway, and provided for the appointment of a committee who should ascertain the value of "the property to be taken . . . and the damages accruing from such taking to any other property of such corporation, except that no damage shall be assessed for the franchise . . . as provided in the charter of such corporation, and shall assess such sum in favor of the owners of said property as will justly compensate them therefor." Held that in assessing such compensation the sums paid by the defendant for damage to owners of prior franchises should be included.

Argued June 16th—decided June 30th, 1908.

PETITION under chapter 258 of the Public Acts of 1907 for the appointment of a committee to appraise the damages for the taking of the defendant's toll-bridge and its approaches and appurtenances for the public use of a public highway, brought to the Superior Court in Hartford County (*Case, J.*) and a committee duly appointed, who awarded the defendant $66,060.73 damages; the defendant filed a remonstrance to the acceptance of the committee's amended report, and the court (*Curtis, J.*), upon the request of all the parties, reserved the questions of law apparent on the

* Transferred from the first judicial district.

record for the advice of this court. *Superior Court advised to sustain the remonstrance and recommit the report.*

By stipulation of the parties, the cause was transferred to the third judicial district to be heard at the June term, 1908.

Prior to 1889 the Enfield Bridge Company, chartered in 1798, possessed, by virtue of its charter, the exclusive right, within the limits therein specified, of maintaining a toll-bridge across the Connecticut River, connecting the towns of Suffield and Enfield ; and there also existed an ancient ferry franchise, owned by private persons, for maintaining a ferry across said river at Thompsonville in said town of Enfield.

In 1889 the legislature granted a charter to the defendant, the Suffield and Thompsonville Bridge Company, authorizing it to construct and maintain a toll-bridge across said river connecting the towns of Enfield and Suffield. 10 Special Laws, p. 1206. Sections 4, 8, and 9 of said charter were as follows :—

" Sec. 4. Said corporation shall pay all damages occasioned to the property of any person or corporation, including the Enfield Bridge Company, or to the proprietors of the ferry at Thompsonville, which they may sustain by reason of the construction and maintenance of said bridge, and unless said damages shall be agreed upon by the parties, they shall be assessed by a committee to be appointed by the superior court of Hartford county, on application by the company hereby incorporated, or by any person or corporation sustaining such damages, which application shall be accompanied by a summons to be served upon the parties interested as is required in cases of civil process before said court; *provided, however,* that in case of amicable agreement, or otherwise, the said Enfield Bridge Company and the proprietors of said ferry may subscribe for and hold capital stock in the company hereby incorporated, in amount less or equal to the amount of damages agreed upon or found in each case, and stock so subscribed shall be treated as stock paid for in cash."

"Sec. 8. The towns of Enfield and Suffield may, at legal meetings called for that purpose, vote to lay out a public highway across said bridge, and when both said towns shall have so voted, the selectmen of said towns shall join in an application to the superior court for Hartford county, praying for the laying out of said highway, which application shall be duly served on said corporation, and the court shall appoint a committee which shall proceed in the manner provided by statute for the laying out of highways in towns.

"Sec. 9. Said committee shall, if it finds said highway will be of common convenience and necessity, appraise and award to said corporation as damages the value of said bridge and appurtenant property, and also such amounts as have been paid as damages to the owners of said ferry and said Enfield Bridge Company, and such other damages as the corporation hereby formed shall suffer from said taking of said property, but no damages shall be allowed to the company for the franchise created by this resolution."

In pursuance of this charter, the corporation constructed a toll-bridge, which it has since maintained and now owns.

In 1907, besides the toll-bridge in question, there was a toll-bridge across the Connecticut River between East Windsor and Windsor Locks, and one between Middletown and Portland, and also a toll-bridge across the Niantic River between East Lyme and Waterford; each being owned by a corporation. In that year the legislature passed an Act for the establishment of free public highways across the Connecticut and Niantic rivers, and for the condemnation of each of said four toll-bridges, namely, the bridge between East Windsor and Windsor Locks, the bridge between Portland and Middletown, the bridge between East Lyme and Waterford, and the bridge in question, between Enfield and Suffield. Public Acts of 1907, p. 871, Chap. 258. The Act provides that the Attorney-General shall bring, in the name of the State, petitions to the Superior Court in the several counties in which said toll-bridges are respectively located, for the ascertainment

of the compensation to be paid each corporation owning each of said four bridges, and prescribes the mode of proceeding, upon each of said petitions. In § 1 the Act provides as follows: " Upon such petition said court shall appoint a committee of three disinterested men who, after being sworn and giving reasonable notice to the parties, shall examine the property proposed to be taken, ascertain the value thereof, including the value of the franchise of ·any corporation the property of which is to be taken, and the damage accruing from such taking to any other property of such corporation, except that no damage shall be assessed for the franchise of the Suffield and Thompsonville Bridge Company, as provided in the charter of said corporation, and shall assess such sum in favor of the owners of said property as will justly compensate them therefor."

The present proceeding was brought by the Attorney-General pursuant to the aforesaid Act. Upon due notice, the defendant, the Suffield and Thompsonville Bridge Company, appeared, and all other persons interested in·said proceeding made default of appearance. The court, having heard the plaintiff and said defendant, adjudged that the State take said bridge to be its property as and for the purpose provided in said Act, and appointed three disinterested men (naming them) " a committee, who, after being sworn and giving reasonable notice to the parties, shall examine the said bridge, its approaches, and appurtenances, the property proposed to be taken, ascertain the value thereof, excluding the franchise of said corporation, as provided in the charter of said corporation, and the damage, if any, accruing from said taking to any other property of said corporation, other than to its said franchise, and who shall assess in favor of the owners of said bridge, approaches, and appurtenances such sum as will justly compensate them therefor."

On April 25th, 1908, the committee filed its report, in which it assesses as compensation and damages to the defendant the sum of $66,060.73, which amount it finds to

be the value of all the property of the defendant proposed to be taken by the State. The report further states that upon the trial the defendant and the Attorney-General made certain conflicting claims in respect to the true meaning of the defendant's charter and of the Act of 1907, upon which claims the committee made certain rulings, to which the defendant duly excepted. The report further states that upon the trial the defendant offered evidence: (1) Of the payment by it to the Enfield Bridge Company of $1,250 for damages by reason of the construction and maintenance of the defendant's bridge at Thompsonville, claiming it was entitled to be reimbursed for said sum under the provisions of its charter and the Act of 1907. This evidence the committee rejected, and the defendant excepted. (2) Of the payment by the defendant of $9,400 to the proprietors of the Thompsonville Ferry, paid partly in cash and partly in stock, claiming it was entitled to be reimbursed for said sum under its charter and said Act of 1907. This evidence the committee rejected, and the defendant excepted. (3) Of a contract between the defendant and the proprietors of the Thompsonville Ferry for the conveyance by said proprietors of all their rights in said ferry to the defendant and of a deed of said ferry rights, claiming that said contract and deed were relevant to the amount of compensation the defendant was entitled to, in connection with evidence that it was still the owner of said ferry rights, which would be taken or destroyed by these condemnation proceedings. The committee received in evidence the contract and deed, but subject to the ability of the defendant to show that the property referred to in the same entered into and became a part of the property to be taken in this proceeding, to wit, the bridge, its approaches, and appurtenances. The defendant excepted to the ruling restricting the admissibility of the evidence.

The defendant remonstrated against the acceptance of the committee's report because the committee overruled its claims in respect to the true meaning of its charter and

of the Act of 1907, and because of the committee's ruling on the admission of evidence, as above stated, and the remonstrance prayed that the committee's report " be not accepted unless amended by adding thereto the amounts so paid to the ferry proprietors and the Enfield Bridge Company." No other objection was made by either party to the report or to its acceptance.

*Charles H. Briscoe* and *J. Warren Johnson*, for the remonstrant (defendant Bridge Company).

*Marcus H. Holcomb*, Attorney-General, and *Hugh M. Alcorn*, for the petitioner (the State).

HAMERSLEY, J.   The Superior Court adjudged that the State take the bridge of the defendant, with its approaches and its appurtenances, to be the property of the State for the public use of a free public highway, as provided in the Act of 1907 for the establishment of free public highways across the Connecticut River and the Niantic River (Public Acts of 1907, p. 871, Chap. 258), and appointed a committee to assess such sum in favor of the defendant owner of said property as will justly compensate it therefor in pursuance of the provisions of said Act.   The direction in the order for assessing just compensation purports to follow the Act, and we must hold that such is its legal effect.   The Attorney-General claims that the Act and the order of court in pursuance of the Act directs the committee, in ascertaining the sum which will justly compensate the owners of the property taken, to consider only the value of the bridge, its approaches, etc., and the damage accruing to any other property of the defendant, and to exclude from consideration the value of the defendant's franchise and the sums paid by the defendant, in pursuance of the requirements of its charter, for the purpose of enabling the State to lawfully establish any bridge highway at that place.   The defendant claims that the Act of 1907 and the order of court in pursuance thereof di-

rects the committee, in assessing just compensation, to include in the sum assessed such sums as may have been paid by the defendant for said purpose as required by its charter. We think this claim of the defendant is correct.

A franchise is property, and, like other property, may be taken for public use. *Enfield Toll Bridge Co.* v. *Hartford & N. H. R. Co.*, 17 Conn. 40, 59. A toll-bridge highway, as well as a turnpike road, is a public highway established by public authority, and to be regarded as a public easement; and persons who have been paid damages for property taken in its construction are entitled to no additional damage when it is made by public authority a free highway. *State* v. *Maine*, 27 Conn. 641, 648, 649. When the defendant, under authority and requirement of its charter, paid the Enfield Bridge Company and the proprietors of the Thompsonville Ferry damage for injury to their property taken for the establishment of the bridge highway, the rights so acquired inured to the benefit of the public. In granting the defendant's charter the State stipulated, and in accepting the charter the defendant agreed, that when the State (as at any time it lawfully might) should authorize the taking of the defendant's property acquired in pursuance of its charter for the public use of a free public highway, upon paying just compensation for the property so taken, that such compensation should be ascertained by appraising the value of the bridge and appurtenant property and such amounts as have been paid as damages to the owner of the ferry and the Enfield Bridge Company and other damages the defendant shall suffer, but not including damages for the defendant's franchise created by its charter. 10 Special Laws, p. 1208. This stipulation and agreement determines the elements to be considered in ascertaining " just compensation," whenever the State may authorize the taking of the defendant's property for a free public highway; and it is immaterial whether the State acts directly in taking the property, or intrusts some public agencies with powers to that effect, such as the towns of Enfield and Suffield.

We think the Act of 1907 recognizes these provisions of the charter, and provides for their observance. That Act applies to four distinct toll-bridges, owned by four distinct corporations. It provides one process and one mode of condemnation for all. It provides that the committee appointed in the proceeding against each corporation shall assess just compensation by ascertaining the value of the property proposed to be taken, including the value of the franchise and the damage accruing to any other property of the corporation except that, in the case of the Suffield and Thompsonville Bridge Company, no damage shall be assessed for its franchise "as provided in the charter of said corporation." There is no such provision in its charter except the one we have already considered, by which the defendant agrees to forego its right to compensation for taking its franchise in consideration of its being awarded as damages the amounts it shall have paid to the owner of the ferry and the Enfield Bridge Company. No other meaning can be given the language used in the Act without eliminating the controlling words, "as provided in the charter of said corporation." We think this meaning is too plainly indicated by the language used to require any consideration of the further argument urged in its support, namely, that the different construction claimed by the Attorney-General would render the provision invalid. It follows that the committee acted improperly in rejecting evidence of the defendant's payment to the Enfield Bridge Company and to the owners of the Thompsonville Ferry. Evidence of the agreement and deed for conveyance of the ferry rights to the defendant was admissible as tending to show a payment of damages to the ferry owner, but for no other purpose. The rulings of the committee upon conflicting claims of law call for no separate consideration, as they were based upon the same misconception of the defendant's charter and the Act of 1907 that lead the committee to reject the evidence offered by the defendant.

The remonstrance alleges this improper conduct of the committee apparent on the face of the report, and claims

that the report, for this reason, cannot be accepted. This claim must be allowed. The report must be set aside, and recommitted, in order that the committee may rehear the parties *de novo* as to the compensation to be awarded, ascertain what, if any, amounts have been paid by the defendant to the owner of the ferry and to the Enfield Bridge Company as damages as provided in the defendant's charter, and include the amounts thus paid in the sum which the committee shall find will justly compensate the defendant for its property taken by the State. It was strongly urged upon argument by the defendant that the interests of the State, as well as of the defendant, demanded an immediate judgment, fixing the amount of just compensation, and that these interests would be greatly jeopardized by any rehearing before the committee. However this may be, the Superior Court is bound to set aside and recommit the report. What arrangement can or should be made by the parties to secure an immediate judgment is a matter for agreement between them, which we cannot consider.

The Superior Court is advised to sustain the remonstrance, to set aside the report of the committee and recommit the same for a rehearing *de novo* as to the compensation to be awarded, but with instructions to assess the sum which will justly compensate the defendant for its property proposed to be taken by the State, including in that sum such amounts as the committee shall find have been paid by the defendant, as provided in its charter, to the owners of the Thompsonville Ferry and the Enfield Bridge Company as damages. This advice, however, is without prejudice to the right of the defendant to withdraw the remonstrance should it so desire.

No costs will be taxed.

In this opinion the other judges concurred, except PRENTICE and THAYER, Js., who dissented.