THE STATE OF CONNECTICUT *vs.* THE SUFFIELD AND THOMP-
SONVILLE BRIDGE COMPANY.

First Judicial District, Hartford, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

A trier is bound to consider all the evidence admitted, for all the pur-
poses for which it is offered and claimed. Not to do this is as much
an error of law as it would be to exclude the evidence when offered.

The report of a committee is not to be set aside on remonstrance simply
because due and proper weight, in the opinion of the court, was
not given to certain evidence, since the committee itself is to de-
termine what weight the evidence shall receive. But it is other-
wise if such evidence, although not formally excluded, was not
taken into consideration and weighed by the committee at all
until after it had reached its conclusion, and was then practically
rejected because it could not be reconciled with such conclusion.

In the present case the committee was charged with the duty of deter-
mining what was just compensation to the defendant for taking
its toll-bridge for highway purposes. Evidence was offered as to
the original cost of the bridge, as to its present condition, and as
to what it would cost now to replace it, and these were the princi-
pal factors upon which the award of the committee was based.
The State offered evidence as to the net income of the bridge, and
the market price or value of the shares of the defendant's capital
stock, and claimed not only that these items were to be considered
in connection with all the other evidence, but that they were con-
trolling in their character. *Held* that in reaching their conclusion
the committee should have considered and weighed all of the evi-
dence, instead of finding the value of the physical structure from
a part of the evidence and its commercial value from another por-
tion, and then rejecting the latter because they could not match
or harmonize the results so obtained; and that for their failure in
this respect the State was entitled to a hearing *de novo.*

"Just compensation" for property taken on condemnation proceed-
ings will ordinarily, but not always, be its market value, if that is
the only property of the owner which is affected by the taking.

Argued October 12th—decided December 17th, 1909.

SUIT to determine the amount of compensation which
should be paid to the defendant for the condemnation of its
toll-bridge over the Connecticut River, taken for the pur-

poses of a public highway, brought to the Superior Court in Hartford County and referred to a committee who heard and reported the facts; the court, *Robinson, J.*, accepted the report and rendered judgment for the defendant for $76,710, from which the plaintiff appealed. *Error and cause remanded for a hearing de novo.*

This case was before this court at a former term, upon a reservation for advice as to the judgment to be rendered upon a remonstrance to the report of the committee. Many of the facts essential to an understanding of the present case will be found in the report of that case. 81 Conn. 56, 70 Atl. 55. Pursuant to the advice there given, the case was by the Superior Court recommitted to the committee for a hearing *de novo* as to the compensation to be awarded to the defendant for the taking of its bridge with its approaches and appurtenances, with instructions to assess upon such rehearing "the sum which will justly compensate the defendant for its property proposed to be taken by the State, including in that sum such amounts as the committee shall find have been paid by the defendant, as provided in its charter, to the owners of the Thompsonville Ferry and the Enfield Bridge Company as damages."

The committee, after such rehearing, reported that "having considered all the evidence and claims of counsel," they found "the structure or physical value of this bridge with its appurtenances, including said toll-house, determined by its original cost and what it would cost to replace it now in its present physical condition, to be $63,370.29, and said approaches are of the value of $2,690.44, making a total of $66,060.73, as the value at the present time of said bridge with its approaches and appurtenances as determined in the manner aforesaid." They also reported that they found that the amounts paid by the defendant as damages to the Enfield Bridge Company and the Thompsonville Ferry Company were, respectively, $1,250 and $9,400. They close their report as follows: "Wherefore,

upon all the evidence in the case, the committee assesses as compensation and damages to the Suffield & Thompsonville Bridge Company for its bridge above described, $63,370.29, and as compensation in damages on account of the approaches the sum of $2,690.44, making a total which the committee assesses as just compensation for said bridge, its approaches and appurtenances, the sum of $66,060.73, which amount, including the sums, to wit, $1,250 and $9,400, which the committee finds have been paid by the defendant as provided by its charter, to the Enfield Bridge Company and the owners of said ferry, makes a total sum of $76,710.73, which the committee finds upon its hearing *de novo* to be the compensation to be awarded to the said Suffield & Thompsonville Bridge Company for the taking of its bridge, approaches and appurtenances as prayed for in the petition, including the amounts paid to the Thompsonville Ferry Company and the Enfield Bridge Company as damages."

Included in the report is this finding regarding certain evidence offered by the State, and its claims in connection therewith: "Upon the hearing the State made the following claim: that in determining the 'value' of the bridge, its approaches and appurtenances, to the defendant, the uses to which the property was put and was capable of, and the income from its use received by the defendant, were necessarily controlling; that 'just compensation' to the defendant company for the property which the State takes is what the property is worth to its owners, the holders of the six hundred shares of its capital stock, and that the earning power of the property to the shareholders determines the value of the shares and consequently the value of the property, and that when the shareholders receive in money the value to them of their shares, they receive an exact equivalent for the property taken, and that when the property is taken away from the bridge company, the amount that will justly compensate it for its loss is that sum which, paid over

to it, will equal the value of its capital stock as a source of income; that while the value of the physical property, ascertained as hereinbefore stated, is an element to be considered, the real and controlling elements in the case are those embodied in the above claim. The State, in pursuance of the claim as above stated, offered evidence to prove what the net income of the property had been from year to year since the operation of the bridge; what dividends had been declared upon the capital stock; what sales of stock had been made and what was its market value. All said testimony was objected to on the part of the defendant. The committee decided to hear said testimony, reserving the right at the conclusion of the trial to exclude it or not to give it the consideration that the State claimed for it. · This course was not objected to, and said testimony in support of the claims of the State was admitted, and having heard all said testimony, the committee overruled the said claim of the State and did not give the evidence the effect claimed for it by the State, and in view of it did not alter the values hereinbefore stated."

When this report was filed in the Superior Court a remonstrance to its acceptance was filed by the State upon several grounds. The second ground was, in substance, because the $66,060.73 assessed as compensation for the bridge, approaches and appurtenances was the amount found to be the structural or physical cost of the property, determined solely by ascertaining its original cost of construction and what it would cost to replace it; and because, in determining and assessing said amount, the committee excluded and gave no weight or effect to the evidence, which was received by the committee, regarding the income received by the defendant from the use of the property, and regarding the actual market value of the capital stock of the company.

A demurrer to the first, second and fifth grounds of remonstrance, and to the prayer for relief, was filed by the de-

fendant. This was sustained so far as it related to the first ground of remonstrance and the prayer for relief, and over-ruled as to the other grounds. The prayer for relief was afterward so amended as to ask that the report be not accepted, and a denial of each paragraph of the remonstrance was then filed by the defendant.

Upon the issues thus joined, a hearing was had to the court, *Robinson, J.,* who found all the paragraphs of the remonstrance untrue, overruled the remonstrance, accepted the report, and awarded, to the defendant the sum assessed by the committee. The State appeals, assigning as error the sustaining of the demurrer to the prayer for relief and the overruling of its claims of law made on the trial, and asks for a correction of the finding.

*Marcus H. Holcomb,* Attorney-General, and *Hugh M. Alcorn,* for the appellant (plaintiff).

*Charles E. Perkins* and *J. Warren Johnson,* with whom was *Charles H. Briscoe,* for the appellee (defendant).

THAYER, J. The report which was accepted by the court was signed by only two of the members of the committee, the remaining member refusing to sign it, and filing a separate report wherein he assigns, as the cause of his disagreeing action, the refusal of the other members to admit the evidence which was offered by the State, referred to in the portion of the majority report which is quoted in the statement of the case. The whole contention between the parties centers around the action of the committee (now treating, as we must, the action of the majority as the action of the committee) regarding this evidence. Each of the grounds of remonstrance except the last is based upon the same alleged improper action of the committee, and the point raised, differently stated in each, is as well presented by the second as by any of them.

The defendant claims that the allegations therein contained, namely, that the amount assessed by the committee, apart from the sums found to have been paid to the ferry and bridge companies, was determined solely by ascertaining the original cost of construction of the property, and what it would cost to replace it, and that the committee excluded and gave no weight to the evidence in question,— are untrue. The court has not only so found, but has also found that the committee did receive and did consider all the evidence with reference to the amount of compensation to be awarded for taking the property. Assuming that this finding means that the evidence was considered for all the purposes for which it was claimed and was admissible, the report, if supported by evidence, was properly accepted and the judgment in pursuance of it must be sustained. This court will not correct a finding of the trial court which has evidence to support it, and that court could not properly set aside the report of a committee which was supported by evidence properly received and considered, simply upon the ground that proper weight had not been given to the evidence. The weight of the evidence was for the committee. *Colgrove* v. *Rockwell*, 24 Conn. 584, 585; *Ashmead* v. *Colby*, 26 id. 287, 312; *Sheppard* v. *Atwater Mfg. Co.*, 43 id. 448, 452.

A committee, or other trier, is bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. Not to do so is an error of law no less than it would be to exclude the evidence when offered. *Rowell* v. *Stamford Street R. Co.*, 64 Conn. 376, 380, 30 Atl. 131. Where a trial court held that a danger sign placed upon the westerly side of a street and near to a railway track which extended through the middle of the street, was evidence of a notice to travelers of danger upon that side of the street, but was no warning at all to travelers upon the easterly side, this was practically an exclusion of the evidence for the purpose for

which it was offered and was held to be error. *Mulligan* v. *New Britain,* 69 Conn. 96, 103, 36 Atl. 1005. It is not enough, therefore, that the committee considered the evidence in question in the present case with reference to the amount of compensation to be awarded to the defendant for taking its bridge, if it considered it only in certain aspects of the case and failed to consider and weigh it with respect to others for which it was claimed and was admissible.

The committee's report shows that the evidence in question, when offered, was objected to on the part of the defendant, and that the committee received and heard it, "reserving the right . . . to exclude it or not to give it the consideration that the State claimed for it." The undisputed evidence before the trial court, upon the hearing of the remonstrance, shows that when this evidence was offered by counsel for the State he claimed that it was competent evidence upon the question of determining the sum which would compensate the defendant, that it was to be considered in connection with the evidence as to the original cost of the bridge and the cost of replacing it, that all were to be considered together; and that later he claimed that this evidence should be controlling. The language of the chairman of the committee, who was an able lawyer, in ruling upon the admission of this evidence, shows the state of mind with which the committee approached the question when they came to the final consideration of the case. He said: "We do not altogether agree to the interpretation which has been put upon the opinion which has been handed down by the Supreme Court, and, excepting for the fact that we are inclined on this occasion, perhaps more so than we were before, to give a pretty liberal scope to the testimony . . . we should exclude this testimony. . . . I cannot myself, speaking for myself, see any probability that anything would be developed that would materially change the valuation that we have already made. . . . But, pos-

sibly, there might be something that would come out, that would make the case different than it is now, and a majority of the committee are inclined to hear the testimony, reserving, however, the right . . . to exclude it," etc.

It appears from the evidence that the valuation referred to as "already made" was that made at the former hearing of the case, which was based solely upon evidence of the cost of the bridge and the cost of replacing it; and the opinion of this court to which reference is made is that which was given when this case was before us at a former term (81 Conn. 56, 70 Atl. 55), when we advised the Superior Court to set aside the former report of the committee and recommit the case to them for a hearing *de novo* as to the compensation to be awarded, with instructions to assess the sum which would justly compensate the defendant for its property proposed to be taken, and include in the sum the amounts found to have been paid to the ferry and bridge companies by the defendant, as provided in its charter. The cause having been so recommitted, it was the committee's duty to proceed to hear the case *de novo*. They were not to treat the rehearing as merely an opportunity afforded the State to reduce, if it could, a valuation already fixed by the former hearing. The rule for the assessment was fixed for them by the decision referred to and by the instructions contained in the order of recommittal. They were to determine the sum which would be just compensation for the taking of the bridge. They were bound to receive and weigh all the evidence which was offered on either side which was admissible for that purpose.

Just compensation will ordinarily be the market value of the property, where, as in this case, the property taken is the only property of its owner which is affected by the taking. But the market value is not always the true test. When a person of large means erects an expensive mansion for his personal residence, his personal tastes and idiosyncrasies are likely to be represented in the location, construc-

tion, and decoration of the building. The market for such a residence is very limited, because the majority of people are not able to keep it up, and those who are able may prefer a residence constructed according to their own tastes. The market value might fall far short of just compensation for the owner of such a residence, taken from him under the power of eminent domain. And in ordinary cases, where the property taken has earning capacity, and the market value is just compensation, while evidence of the net income of the property is always competent evidence, it is not necessarily controlling. A purchaser in the market for it will not only look to the present and past income from it, but will inquire as to its future prospects. In the case of a toll-bridge, the prospective increase of the population in the contiguous territory, and consequent increase of traffic across the bridge, would tend to increase the market value. The fact, if such should be a fact, that free bridges across the same stream in close proximity to such toll-bridge were about to be opened, would have a contrary effect. So, too, the cost of replacing the bridge by a new structure, in case it should be carried away by a freshet or otherwise destroyed, would be likely to be considered by a prospective customer. Evidence of all these facts, and of others of like nature, as well as of the net income received from the property, the par value of the stock of a corporation owning it, and the dividends paid upon such stock, is admissible upon the question of just compensation for taking such a bridge, and when received can be and should be considered and weighed together in arriving at the sum which will constitute such compensation.

Such evidence was before the committee in the present case, and the question before the Superior Court was whether the committee so considered and weighed it. The State claimed that they did not, but that, in arriving at the sum which was to be awarded to the defendant, considered only that portion of the evidence which related to the orig-

inal cost of the property and what it would cost to replace it, and that they excluded and gave no weight or effect to that portion which tended to show the amount of income received from the use of the property and the actual market value of the capital stock of the defendant corporation.

The three members of the committee were witnesses before the court, and the only witnesses, other than the stenographer who reported the evidence at the committee hearing and was called merely to produce his notes and show what claims were made at the hearing. There was no conflict of testimony between the members of the committee, except that the minority member testified that the evidence in question was excluded by the majority members. They testified that in their view it was not excluded. It is apparent from the testimony of the three that the question of excluding the testimony was not formally put and passed upon by the committee. All are·agreed as to just what was in fact done. The dissenting member considered that this amounted to the exclusion of the testimony; in the view of the others it did not. All concede that the question of what use should be made of the testimony was fully considered, that the majority of the committee decided that it should not be controlling, as claimed by the State, and that no weight should be given to it in determining the value of the bridge or the amount of the award to be made to the defendant. The chairman of the committee testified that "after the physical value had been determined, . . . the question arose what should be done with this evidence, what effect it should have upon the value already determined. . . . Instead of allowing $5,000 or any other sum for depreciation, from the structural value, on account of the commercial value, we gave it no effect at all. . . . It is fair to say that we did not give it any effect as qualifying the structural value, because we could not match those two things at all. It had got to be either white or black, controlling or not controlling, we could not do it. . . . In de-

termining that it should not be controlling or set aside the structural consideration, we could not give it any effect, even to $500 or any other sum. . . . We could not, as it appeared to me, take the view of the Attorney-General, when he argued as to the admissibility of this testimony, that it was simply a factor and should be considered with the rest."

This testimony was not contradicted. It was corroborated by the other members of the committee. It thus appears that the evidence relating to the income of the property and the value of the stock was not considered, together with the other evidence, to determine what would be just compensation for the defendant; that it was only considered as bearing upon what was termed the commercial value as distinguished from the physical value of the property; that the committee held that such commercial value should not control the physical value, found by them on the first and second hearings to be $66,060.73; that to deduct from such physical value $500, or any other sum, on account of the commercial value, would be to give the latter controlling effect, and so no weight was given to it in determining what sum should be assessed in favor of the defendant. The evidence was thus excluded as a factor to be considered with the rest in arriving at the sum to be assessed to the defendant,—one of the purposes for which it was offered and for which it was admissible. There was no difficulty in considering the evidence bearing upon the income and profit derived from the property, in connection with that relating to its cost and the cost of replacing it, to determine its market value. This is what they should have done, instead of finding the physical value from a portion of the evidence, and its commercial value from another portion, and rejecting one because the two could not be matched. The court should have found true the allegations of the second ground of remonstrance; and the finding is corrected accordingly. As thus corrected, the finding does

not support the judgment.   The judgment is erroneous for the reasons stated in the plaintiff's third and fourth reasons of appeal.

There is error, the judgment is reversed, and the case remanded with directions that the remonstrance be sustained and the case recommitted to a committee for a hearing *de novo.*

In this opinion the other judges concurred.