[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 17145
The Commissioner of Transportation (hereinafter "Commissioner") exercised his right of eminent domain over a certain strip of land along a substantial portion of road frontage of property owned by the respondent, Garcia Realty, LLC (hereinafter "owner"), and awarded damages therefor in the amount of six thousand one hundred ($6100) dollars. The owner asserts that the award was inadequate and has taken an appeal.
The property in issue was purchased by the owner on March 9, 1999 for one hundred eighty thousand five hundred ($180,500) dollars. The two principal owners of Garcia Realty, LLC, are Mr. Garcia and his wife. The property was purchased as a location for an expanded travel agency which had grown far beyond its capacity at its then existing location. The address of the property is 123 Danbury Road in New Milford, which road is also known as US Route 7 and Route 202. The locus is in an active commercial area.
The real estate in issue is located in an Industrial (I) zone and is lawfully nonconforming as to the minimum lot area, the minimum front yard setback, and the minimum side yard setback. It was originally constructed in 1935 as a residence and converted to a commercial use by a prior owner. The present owner testified that the property was in a rundown condition, and needed considerable renovation at the time of the purchase. Thereafter, he renovated his travel agency and in doing so expended approximately two hundred thousand ($200,000) dollars in addition to the purchase price.
The subject is level and at street grade, is improved by a two and a half (2-1/2) story two thousand three hundred thirty-two (2,332) square foot commercial building, together with a four hundred eighty-six (486) square foot barn, currently used for storage but with the potential for ultimate office and retail use. The property is serviced by a public sewer and an on-site dug well in the front of the building just off the southwest corner of the building. The area square footage of the parcel is fourteen thousand three hundred seventy-five (14,375) square feet in size and is rectangular in shape. There are one hundred twenty (120) feet of frontage along the east side of the road. This is considerably less than the eighty thousand (80,000) square feet mandated under the New Milford Zoning Regulations.
The first floor of the building was renovated for retail use. The second floor provided offices and a conference room. The third floor contains a kitchenette and an employee's lounge for the current eighteen employees now located in the building. Preparing for expansion, the owner provided workstations for twenty-five (25) employees. As of March 9, CT Page 17146 1999, there was a parking area which was initially graveled to provide for interim parking, and later in October of 2000, paved over as a parking lot. There are twenty-eight (28) designated parking spaces available, including a loading space for deliveries as required by the zoning regulations. Virtually all the parking spaces were occupied on a daily basis between the owners, eighteen (18) employees, deliveries and visitors. In addition, a large sign visible in both directions along Route 7 and 202, has been erected and stands in the front of the property. As of January 19, 2001, there was a buffer area within the highway line between the paved portion of the highway and the beginning of the parking lot.
On January 19, 2001, the Commissioner condemned five hundred sixty-five (565) square feet plus additional slope rights over four hundred fifty-seven (457) square feet for six thousand one hundred ($6100) dollars. The condemned parcel is approximately six (6) feet in width on the northern end, and four (4) feet at the southerly end. It encompasses virtually the entire length of the property and because of the angle of the taking, the owner declares that he will lose four (4) parking spaces. He locates two of those parking spaces immediately in front of the building with two on the opposite side thereof. The effect of the condemnation will be to move the highway line within eleven (11) feet of the front of the building. The buffer area between the parking area in front of the building and the paved portion of the highway will be lost. The large sign is nineteen (19) feet from the northwest corner of the building. It will be within the new highway line necessitating its relocation. Although the Commissioner argues that the size of the taking is small, it is clear that it will have a significant impact upon the use of the property after the taking. It is the owner's position based upon what he claims to be a more accurate appraisal analysis of one Christopher Karen, his appraiser, that the award of damages should be reconsidered and reassessed at fifty-seven thousand ($57,000) dollars.
The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. Connecticut Printers, Inc. v. Redevelopment Agency, 159 Conn. 407,410, 270 A.2d 549 (1970). Although the market value of the taken property is ordinarily the most appropriate measure of fair compensation; DelVecchio v. New Haven Redevelopment Agency, 147 Conn. 362, 363-64,161 A.2d 190 (1960); our Supreme Court has long held that other measures may be appropriate when the fair market value of damages does not fully compensate the owner. Colaluca v. Ives, 150 Conn. 521, 530, 191 A.2d 340
(1963); Winchester v. Cox, 129 Conn. 106, 114-15, 26 A.2d 592 (1942);State v. Suffield Thompsonville Bridge Co., 82 Conn. 460, 467-68,74 A. 775 (1909). "`[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The CT Page 17147 paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken.'" Alemany v. Commissioner of Transportation, 215 Conn. 437,444 (1990).
The court in Alemany noted that it consistently departed from the fair market value measure damages in situations of partial takings. It remarked that when only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowners remaining property that the severance of a portion of that property causes. It cited to D'Addario v. Commissioner ofTransportation, 180 Conn. 355, 363 (1980); Tandet v. Urban RedevelopmentCommission, 179 Conn. 293, 298 (1979). To ensure that the severance damages are included in the trial court's assessment, damages should be calculated by the "before and after rule" under which the proper measure damages is the difference between the market value of the "whole tract" as it lay before the taking and the market value of what remained of it thereafter. It cited to Northeastern Gas Transmission Co. v. Ehrhorn,145 Conn. 83, 86 (1958); Laurel, Inc. v. Commissioner of Transportation,180 Conn. 11, 36 (1980); Alemany v. Commissioner of Transportation, supra.
In condemnation proceedings, the trial court is more than the trier of fact or an arbiter of differing opinions of witnesses. Its duty is that of making an independent determination of value and fair compensation in light of all the circumstances, the evidence and the court's general knowledge as well as its viewing of the premises. In visiting the property, the trier may rely on his visual observations to supplement the evidence presented for his consideration by the witnesses under oath.D'Addario v. Commissioner of Transportation, supra, 366; § 13a-76 of the General Statutes. At the conclusion of the hearing, an inquiry was made of counsel as to a convenient date for viewing the property. At that time, each declined the invitation to attend and merely requested that the court advise them of the date it intended to view the property to accomplish its obligation under the statute. They were so advised of the date subsequently.
Before the taking, the subject parcel consisted of fourteen thousand three hundred seventy-five (14,375) square feet according to the owner's appraiser, and fourteen thousand seven hundred forty-three (14,743) square feet according to the Commissioner's expert. Each agree, however, that the amount of land taken is five hundred sixty-five (565) square feet. The remaining parcel after the take according to the Commissioner would be fourteen thousand one hundred seventy-eight (14,178) square feet, and according to the owner thirteen thousand eight hundred ten (13,810) CT Page 17148 square feet. The appeal does not turn on the remaining square footage in this instance.
To reiterate, there are two buildings on the premises: the first of which is a newly renovated two thousand three hundred thirty-two square foot commercial building used as a travel agency; and the second is a barn. Virtually all of the remaining parcel is utilized as a parking area which is paved and duly marked for twenty-eight (28) cars. The evidence indicated that twenty-three (23) parking spaces were utilized daily by employees, clients and service deliveries. The evidence indicated some potential for business growth which would occupy the additional five (5) spaces. The zoning requirements specify twelve (12) spaces on this parcel, and each of the experts agreed that the highest and best use of the property is its present use, that is, an owner occupied commercial use.
The before and after opinions of fair market value on this validly preexisting nonconforming use are not surprisingly, radically different. The Commissioner's expert set the value before taking at one hundred thirty-three thousand seven hundred ($133,700) plus X. The after value is said to be one hundred twenty-seven thousand six hundred ($127,600) dollars plus X. It set damages as previously indicated at six thousand one hundred ($6,100) dollars plus X. X in that equation is said to be "where `X' equals contributory value of related improvements not effected by the taking." The owner's expert opines a value before taking three hundred forty thousand ($340,000) dollars, and a value after the taking of two hundred eighty-three thousand ($283,000) dollars, the difference of fifty-seven thousand ($57,000) dollars.
The Commissioner recites that the taking will exacerbate the preexisting and nonconforming status of the subject property by virtue of the following: (a) the taking reduces the land area from fourteen thousand three hundred seventy-five (14,375) square feet to thirteen thousand eight hundred ten (13,810) square feet. Minimum lot size in the industrial zone is eighty thousand (80,000) square feet; (b) the taking reduces the front yard setback from fifteen (15) feet more or less to eleven (11) feet more or less. Minimum front yard setback in the industrial zone is one hundred (100) feet. There is also a significant impact upon the signage of the property which is within or straddles a parcel taking. The Commissioner asserts that five hundred ($500) dollars is a sufficient allowance for such relocation while the owner contends that two thousand ($2000) dollars would be necessary.
The owners also contend that they will lose at least four parking spaces as a result of the taking and the value of the property will be further reduced by the noise and vibrations from the proximity of the CT Page 17149 relocated Route 7 or 202 by the state. The site inspection revealed two parking spaces on the immediate direct west side of the building. That inspection disclosed that the current space closest to the highway may in fact be in within the highway right of way as it now stands. It also appears that it will be a loss of two additional spaces on the south side along the southerly boundary of the property. The width of the existent spaces is the standard eight to nine (8-9) feet. The Commissioner's argument fails to consider the necessary apron leading into the taken parcel. To attempt to preserve two of the four spaces the owner contends will be lost, presents a picture of vehicles parked adjacent to the highway, a location and a practice which cannot be seriously entertained.
The Commissioner has suggested that a cost to "cure" approach should be considered by developing the cost to locate additional parking on the site. While there are instances while such an approach is a legitimate measure of damages in these cases, the concept escapes reality in this particular proceeding. There simply is no space on this parcel where an additional parking space might be located. All available spaces are taken with the main building, the barn, and the parking area as designated. There was no credible evidence whatsoever to support that concept.
The cost of relocation of the sign presents two possible alternatives. The present installation consists of what the court would call a frame with three mounted signs therein which are five (5) feet by six (6) feet, six (6) feet by two (2) feet, and six (6) feet by thirty (30) inches. All three are lighted, the location thereof is clearly within the taking area or straddling the taking area boundary. It is not beyond the realm of probability that two separate installations may well be necessary. The relocation will remove the sign from the front of the building to the boundary extremities. While the so-called frame may be usable for one of these two signs, an entirely new sign would be necessary for the second. The concrete pads, therefor, as well as the wiring, will certainly add to the expense of relocation. The court is satisfied that the owner's expert was able to justify his opinion of the cost of such relocation at two thousand ($2000) dollars by the explanation that he offered.
The owners have challenged the Commissioner's expert on his methodology in determining what the measure of damages should be in this case. The record suggests to this court very clearly that the Commission's expert did not employ a full before and after valuation of the property, but did a land value appraisal only. The building and improvements were given an "X" value. There was no severance damage considered nor any of the improvements on the property, either buildings or site improvements. The court disagrees that these improvements were not impacted by the take. CT Page 17150 The proper measure of damages is a difference between the market value of the "whole tract" as it lay before the taking and the market value that remained after it. While the trier is the final judge of the credibility of witnesses and of the weight to be given to their testimony, and its prerogative to determine what expert testimony it will accept, the exercise of these prerogatives is reviewable when it is apparent that the court has misapplied or overlooked or given a wrong or improper effect to some test or consideration which it was its duty to regard. Gontarz v.Berlin, 154 Conn. 695, 697 (1967); Morgan v. Hill, 139 Conn. 159, 161
(1952).
The impact upon this taking of a portion of what might be described as an extremely nonconforming use cannot be ignored. It is conceded that the improvements on this parcel, both exterior and interior, as well as the barn standing as an outbuilding, make the property highly visible and attractive.
The Commissioner argues that the owner's expert, testifying to a theoretically negative impact due to increased noise and vibration, is purely subjective without any additional evidence. While no market evidence was provided to support a diminution in value, it was noted while visiting the site that there were extensive vibrations as well as noise from vehicular traffic which passed by during that viewing. It logically follows that moving that traffic even slightly closer to the main building would continue and increase the noise and the vibration which was quite evident. It should also be noted that during the visit the court became aware of the existence of a maintenance and parking truck facility for multi-axle and multiwheeled vehicles utilized by the Kimberly-Clark Corporation. That facility is immediately north of and abuts the Garcia Realty Property.
Each of the experts utilized different methodologies. The Commissioner chose the cost approach, and as previously indicated, ascribed the letter X which equals the contributory value of all site improvements not effected by the partial taking. The owner chose the sales comparison approach, disagreeing with the premise offered by the Commissioner, that the taking had no effect upon the building and improvements standing on the parcel. The court is satisfied that the sales comparison approach is a much more reasonable and accurate measure of damages as a result of this taking.
However, it does not concur with the loss of value percentage expressed by the appellant's expert. It finds that the loss and value of the remainder due to the proximity of the highway to the buildings and loss of parking spaces is five (5) percent as opposed to the fifteen (15) percent expressed by the owner's appraiser. When that percentage is CT Page 17151 applied to the market value before taking of three hundred forty thousand ($340) dollars, diminished by the market value of the land taken found by the appraiser to be three thousand nine hundred fifty-five ($3955) dollars, which is additionally reduced by the cost of relocating the sign of two thousand ($2000) dollars, and finally the application of the five (5) percent of the market value before taking, yield a figure of twenty-two thousand nine hundred fifty-five ($22,955) dollars. This adjustment yields a market value after taking of three hundred seventeen thousand forty-five ($317,045) dollars. This result is further diminished by the award previously made of sixty-one hundred ($6100) dollars, thereby requiring an additional award of sixteen thousand eight hundred fifty-five ($16,855) dollars.
Judgment may enter in accordance with the foregoing.
Moraghan, J.T.R.