## MIDDLETOWN COMMERCIAL ASSOCIATES LIMITED PARTNERSHIP ET AL. *v.* CITY OF MIDDLETOWN ET AL.
(14288)

Dupont, C. J., and Spear and Hennessy, Js.

---

[5] See footnote 3.

Argued February 27—officially released August 6, 1996

*Robert B. Shapiro*, with whom was *Holly Jean Bray*, for the appellants (plaintiffs).

*Dennis C. Cavanaugh*, with whom were *Trina A. Solecki*, city attorney, and, on the brief, *Robert M. Barrack*, for the appellees (named defendant et al.).

*Glenn E. Coe*, with whom was *Kerrie Dunne*, for the appellee (defendant One Court Street, Inc.).

SPEAR, J. The issues in this case turn on whether the plaintiffs,[1] owners of the River View Shopping Center Mall in Middletown, have any rights by virtue of a 1965 parking agreement between the original mall developer and the city of Middletown. In 1993, the capacity of the subject parking garage was reduced from 600[2] parking spaces as specified in the parking agreement to 365 spaces. After this reduction, the plaintiffs brought suit claiming to be successors in interest to the original developer and now appeal from the judgment in favor of the defendants.[3] They assert that the trial court improperly (1) concluded that the plaintiffs could not enforce the parking agreement because it was never assigned to them, (2) found that even if the agreement was enforceable, there was no breach

---

[1] The plaintiffs are Simon Konover and Middletown Commercial Associates Limited Partnership.

[2] Although the parking agreement required the city to construct and maintain a 600 car garage, the trial court found that the number of parking spaces did not exceed 565.

[3] The defendants are the city of Middletown, the Middletown parking authority and One Court Street, Inc. The trial court found that the Middletown parking authority is an agency of the city and the plaintiffs make no assertion that the parking authority is liable independently. References to the city include the parking authority.

because the city has provided sufficient parking spaces to satisfy the plaintiffs' parking needs, (3) found that the parking agreement did not create an easement appurtenant, (4) found that the city had not taken the plaintiffs' easement or contract rights without just compensation, (5) found no breach of the implied covenant of good faith and fair dealing that arose out of the contractual relationship between the plaintiffs and the city, (6) failed to find that the city had ratified the parking agreement, (7) concluded that the plaintiffs could not assert the doctrine of equitable estoppel as a cause of action and (8) denied the plaintiffs' request to amend the complaint to add their transferee as a party plaintiff. We conclude that the plaintiffs have enforceable rights in the 1965 parking agreement, not by virtue of an easement, but as successors in interest to the original developer. Accordingly, we reverse the judgment.

The trial court found the following facts. On or about May 4, 1959, the common council of Middletown approved a redevelopment project whereby the city was to acquire, clear and develop three parcels of land, later designated as AA, AB and AC. The parcels were adjacent to one another with AB being the middle piece. The redevelopment plan obligated the city to provide a multilevel parking facility on parcel AB (garage parcel).

On or about March 6, 1963, the River Valley Development Corporation (redeveloper) entered into an agreement with the city whereby the redeveloper would purchase and develop parcels AA and AC. On October 9, 1963, the redeveloper and the city entered into a parking agreement by separate instrument. Pursuant to this agreement, the city was required to construct a parking garage for not less than 600 cars on the garage parcel and to operate and maintain that facility. The redeveloper was given rights of ingress and egress as well as one hour of free parking for customers of its

tenants. In return for these privileges, the redeveloper agreed to pay the city a minimum fee of $9000 per year for the first 150,000 parking hours with a schedule of increased payments for parking hours in excess of 150,000 per year. The thirty-five year term of the parking agreement commenced upon the opening of a Sears store on April 19, 1965.

In 1989, the plaintiffs acquired parcel AA and the south two thirds of parcel AC.[4] In 1990, the state department of public works (DPW) published a request for proposals to construct a new courthouse in Middletown. On April 16, 1991, the DPW approved One Court Street's[5] proposal to construct the courthouse on the north third of parcel AC. In December, 1991, One Court Street obtained title to the north portion of parcel AC and the north portion of the garage parcel for construction of a courthouse and a parking facility. After acquiring the north portion of the garage parcel from the city, One Court Street demolished approximately one third of the parking garage to make room for the new courthouse and its parking garage.[6] Additional facts will be developed as necessary for the resolution of the issues.

In this action, the plaintiffs claim that the city and One Court Street breached the plaintiffs' contract rights as successors in interest to the parking agreement and wrongfully took, or interfered with, their rights as owners of an easement appurtenant in the garage parcel. At trial, the court bifurcated the issues of liability and damages. The trial court found that the defendants were

---

[4] There were numerous intervening transfers of parcels AA and AC to various entities prior to the plaintiffs' acquisition.

[5] The proposal was submitted by a team associated with One Court Street. For ease of reference, we refer to the proposal as that of One Court Street. The One Court Street team's proposal was selected over a competing proposal that was submitted by Konover and Associates, Inc.

[6] Prior to the demolition, the plaintiffs sought unsuccessfully to enjoin the closing and demolition of the north portion of the garage parcel.

not liable because the plaintiffs had no right to enforce the contract and the parking agreement did not create an easement that ran with the land. Earlier in the proceedings, the trial court, *J. Walsh, J.*, had granted summary judgment for the defendant One Court Street on the fifth count of the plaintiffs' complaint that alleged that One Court Street was equitably estopped from denying that there was a binding parking agreement. The trial court found for the defendants on the remaining counts of the plaintiffs' complaint and this appeal followed.

I

The plaintiffs first claim that they are entitled to enforce the parking agreement because they are successors in interest to the original developer. The trial court did not directly address this claim. Rather, the trial court found that the plaintiffs had no right to enforce the agreement because there was no privity of contract with the defendants and the parking agreement had never been assigned to the plaintiffs.

The complaint expressly alleges that the plaintiffs are "successors-in-interest to the Redeveloper," not that they are assignees. At trial and on appeal, the plaintiffs expressly disavow any claim that they are assignees of the parking agreement. In support of their claim that they are successors in interest, the plaintiffs rely primarily on *Safer* v. *Perper*, 569 F.2d 87 (D.C. Cir. 1977).

In *Safer*, Winthrop Lawrence Corporation (Winthrop) signed a contract with the Donohoe Construction Company (Donohoe) whereby Donohoe was to erect a motel. Somerset Properties Limited Partnership (Somerset) thereafter leased the land on which the motel was erected and took title to the improvements. The construction contract was never assigned to Somerset. The construction contract provided in pertinent part: " 'The owner and the contractor each binds himself, his

partners, successors, assigns, and legal representatives to the other party hereto' . . . ." Id., 94. As part of a multiparty action, Somerset, which had previously paid Donohoe $205,079.58 to discharge its mechanic's lien, sought damages from Donohoe for construction defects. Donohoe moved for summary judgment, claiming that Somerset was not in privity of contract with it and, therefore, could not recover. The trial court denied the motion, ruling that Somerset was the successor in interest of Winthrop and, therefore, had the capacity to recover on the contract.[7]

In determining whether Somerset was a successor in interest, the Court of Appeals for the District of Columbia noted that successor in interest "is a [term] with many legal applications and that it is therefore difficult to define precisely. . . . To determine the meaning of 'successor [in interest]' in the area of labor law, Mr. Justice Marshall appears to endorse a case-by-case approach with emphasis on the facts of each case. . . . The same fact-oriented approach has also been employed by courts in defining the limits of purely contractual successorship. . . . '[S]uccessor [in interest]' has often been defined as 'one who takes the place that another has left, and sustains the like part or character.' " (Citations omitted.) Id., 95.

The court noted that "[Somerset] 'took the place' that Winthrop 'had left' and 'sustained the like part or character.' " Id. The court further stated, "Under the construction contract, it was the 'part' of Winthrop to pay money. It was [Somerset] who ultimately completed this obligation. Thus, with respect to the very obligations created by the construction contract itself, [Som-

---

[7] The trial court reasoned that Somerset had such contract rights because it became the owner of the property. The Circuit Court of Appeals agreed that Somerset was a successor in interest, but that its contract rights arose because of its successor in interest status, not because it became the owner of the property.

erset] occupied the place that Winthrop abdicated. Not only did [Somerset] 'sustain the like part' as Winthrop, it sustained the very *same* part as Winthrop. . . . Thus, there is a high degree of similarity in role and interest between Winthrop and [Somerset]. Under the facts presented by this case . . . we hold that [Somerset] was the successor of Winthrop." (Emphasis added.) Id., 95–96. The court then concluded that Somerset, "as successor [in interest] to Winthrop, has a right of action against Donohoe for breach of the construction contract . . . ." Id., 98.

We find the reasoning of *Safer* persuasive. Pursuant to the parking agreement, the original redeveloper here was obligated to pay only for the parking privileges for its tenants and their customers. The plaintiffs, in sustaining a like part or character as the original redevelopers, are obligated to pay only pursuant to the schedule set forth in the agreement. The plaintiffs have paid the agreed amount in return for the parking privileges. Under the factual circumstances here, we discern no reason why the plaintiffs should not be considered successors in interest to the original developer.

The city's claim that the use of the words "successors and assigns" in the parking agreement merely makes the agreement *assignable* is not supported by citation to any case law. The defendants cite 6 Am. Jur. 2d, Contracts § 10 (1963), and 3 Restatement (Second), Contracts § 323, comment (b) (1991), for the proposition that the use of words such as "successors" can indicate the parties' *intention* that the contract be assignable. Nothing in the cited material suggests, however, that there can be no successors in interest *without* an assignment.

The plaintiffs are not strangers to the contract. The city accepted monthly payments totaling $9000 per year from the plaintiffs without objection. Our Supreme Court has said: "One enjoying rights is estopped from

repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity." *Schwarzschild* v. *Martin*, 191 Conn. 316, 321, 464 A.2d 774 (1983); see also *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, 39 Conn. App. 444, 451, 664 A.2d 819 (1995). Although the city has not challenged the validity of the parking agreement, it posits two reasons why estoppel should not apply.

First, the trial court ruled that the $9000 per year payments "are the functional equivalent of the payment of rent" and that the "arrangement between the city and the defendants can best be categorized, de facto, as a month-to-month tenancy." Our review of the evidence discloses nothing that would support such conclusions.

Second, the defendants claim that the city accepted the payments in consideration for free monthly parking for Sears employees, rather than pursuant to the parking agreement. The trial court made no such finding. Moreover, the evidence on which the defendants rely indicates only that representatives of the city were of the *unilateral* opinion that the payments were for parking for the Sears employees. We discern no reason why the estoppel principle enunciated in *Schwarzchild* and *Sawmill Brook* should not apply to the city's claim that it may accept the plaintiffs' payments, yet incur no obligations pursuant to the parking agreement.[8]

The defendants further claim that the word "successor" means one who takes property pursuant to the laws of descent and distribution. Because the plaintiffs did not take the property pursuant to the laws of descent and distribution, the defendants assert that they cannot be successors. The defendants rely on the following language from this court: "The term 'successor' is

---

[8] This resolution disposes of the plaintiffs' equitable estoppel claims with respect to the city and its parking authority.

defined as '[o]ne who takes the place of another by succession.' Black's Law Dictionary (5th Ed.). Succession refers to '[t]he devolution of title to property under the law of descent and distribution . . . the word when applied to realty denotes persons who take by will or inheritance and excludes those who take by deed, grant, gift or any form of purchase or contract.' Id. Thus, a successor, as applied to realty, is one who takes by will or inheritance, rather than by deed, grant, gift, purchase or contract. In contrast, a successor in interest is 'one who follows another in ownership or control of property'; id.; and does not exclude those who take by deed, grant, gift, purchase or contract." *Drazen Properties Ltd. Partnership* v. *E. F. Mahon, Inc.*, 19 Conn. App. 471, 475, 562 A.2d 1142 (1989).

In asserting this claim, the defendants ignore the fact that the plaintiffs have always claimed to be successors in interest, not successors. The defendants also ignore the distinction made in *Drazen* between successors and successors in interest. *Drazen* interpreted General Statutes § 47-19,[9] a statute relating *only* to real property where "the purpose of the statute is to protect creditors and bona fide purchasers from being bound by unre-

---

[9] General Statutes § 47-19 provides: "Leases for more than one year. No lease of any building, land or tenement, for life or for any term exceeding one year or which provides for the renewal thereof or an option to purchase such building, land or tenement, shall be effectual against any persons other than the lessor and lessee and their respective heirs, successors, administrators and executors, unless it is in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land, provided a notice of lease in writing, executed, attested, acknowledged and recorded in the same manner as a deed of land and containing (1) the names and addresses, if any are set forth in the lease, of the parties to the lease, (2) a reference to the lease, with its date of execution, (3) the term of the lease with the date of commencement and the date of termination of such term, (4) a description of the property contained in the lease, (5) a notation if a right of extension or renewal is exercisable, (6) if there is an option to purchase, a notation of the date by which such option must be exercised and (7) a reference to a place where the lease is to be on file shall be sufficient."

corded leases of more than one year." Id., 475. "The statute specifically excluded 'heirs, successors, administrators and executors' of the original lessor and lessee from its protection. To conclude that the term 'successors' refers to all successors in interest to the original lessor or lessee would thwart the purpose of the statute. Creditors and bona fide purchasers also may be successors in interest to the original lessor or lessee and, thus, such an interpretation would potentially except those who the statute is designed to protect." Id., 476. Nothing in *Drazen* supports a proposition that one may be a successor in interest only with respect to real property acquired by the laws of descent and distribution.

The trial court improperly concluded that the plaintiffs had no rights in the parking agreement.[10] We must, therefore, address the question of whether the contract was breached.

II

The trial court ruled that even if the plaintiffs had rights in the contract, there was no breach by the city. This conclusion was based on the court's interpretation that the contract requires that "a reasonable number of spaces" be available for the plaintiffs' tenants and customers and its further finding that "since the advent of the parking agreement, there are hundreds more spaces in the vicinage of the project area. These include the reopened Arcade, the Metro parking area, the Middlesex Mutual parking garage, the newly opened courthouse garage and the spaces available in the parking areas enterable from Washington Street and Court Street lying between the Main Street stores and the old courthouse." Because of these spaces, the trial court found that there were "a reasonable number of parking

---

[10] Our determination that the plaintiffs may enforce the contract makes it unnecessary for us to resolve the claim that the city ratified the parking agreement.

spaces in the vicinage to accommodate the needs of tenants of the plaintiffs" and, therefore, the requirements of the parking agreement were satisfied.

The parking agreement does not state how many spaces must be made available for the plaintiffs' tenants and customers. "The interpretation of a contract term that is not so clear as to render its interpretation a matter of law is a question of fact, subject to the clearly erroneous standard of review. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citations omitted; internal quotation marks omitted.) *Larsen* v. *Jacobson*, 38 Conn. App. 186, 189, 659 A.2d 753 (1995).

The trial court used the method of examining the available parking in the vicinage to arrive at its conclusion that the parking agreement terms were satisfied. The court's conclusion is not legally correct because the issue before it was whether the parking garage had a sufficient number of spaces pursuant to the agreement, not whether such parking was available elsewhere. The purpose of the parking agreement between the original redeveloper and the city was to provide convenient parking for the shopping center with at least one hour of free parking for the shopping center customers. This is precisely what the original redeveloper bargained for in return for the $9000 per year minimum payment to the city.

The plaintiffs make no claim that they are entitled to the *exclusive* use of all of the parking spaces. Clearly, the agreement gives the plaintiffs no such rights. We agree with the trial court's legal interpretation that the parking agreement does not give the plaintiffs exclusive

rights to any particular number of parking spaces, but does require that the city make available to the plaintiffs a reasonable number of spaces consistent with their needs. We disagree with the trial court's conclusion that those spaces may be located elsewhere than the garage.

On remand, in determining whether the city breached the contract, the trial court should take into account all of the circumstances surrounding the parking needs of the plaintiffs, including, but not limited to, automobile traffic into the garage, the number of parking validations, the number of tenants and their particular parking requirements.[11]

The plaintiffs make two other related contract claims: (1) that the city violated the covenant of good faith and fair dealing that is implicit in all contracts, and (2) that the city "took" its rights in the contract without paying just compensation.

The trial court did not decide whether the defendants had breached the implied covenant of good faith and fair dealing because it concluded that the plaintiffs had no rights in the parking agreement. Because we conclude otherwise, the trial court should address this claim on remand.

Resolution of the "taking" claim is unnecessary in view of our earlier conclusion that the plaintiffs may enforce the agreement. If the trial court finds that the city's actions do not constitute a breach of the contract, those same acts could not be found to be a "taking" of

---

[11] *Collins* v. *Sears, Roebuck Co.*, 164 Conn. 369, 321 A.2d 444 (1973), may furnish helpful guidance with respect to the breach of contract issue. *Collins* involves the same parking garage as here and lease provisions between the original redeveloper and Sears regarding garage parking that are similar to the provisions of the parking agreement here. Sears claimed that it was partially evicted from the garage by the assignment of 103 to 350 of the 600 parking spaces to monthly parkers. The factors that the trial court considered in resolving that issue are similar to the factors that the trial court must consider in resolving the breach of contract issue here.

the plaintiffs' contract rights that would warrant compensation. This is so because a finding of no breach would mean that the remaining garage spaces are sufficient to satisfy the contract, in effect, that nothing was "taken" from the plaintiffs. Conversely, we discern no meaningful difference in the factors that the trial court would consider in assessing damages for the breach of the contract and the factors that would be considered in determining just compensation for a "taking" of the plaintiffs' contract rights.[12]

## III

### A

The plaintiffs claim that the parking agreement created an easement that ran with the land. The trial court rejected this claim.[13] The plaintiffs primarily rely on paragraph six of the agreement which states: "This parking agreement shall inure to and be binding upon the successors and assigns of the parties hereto." The plaintiffs assert that the rights provided by the parking agreement added value to parcels AA and AC, that the defendants had notice of an easement and that the defendants recognized the plaintiffs' rights thereunder.

[12] The plaintiffs assert in their brief that "a takings claim may be premised upon the taking of contract rights." They cite to 26 Am. Jur. 2d, Eminent Domain § 81 (1966), and two cases involving the taking of franchise rights, *Gray Line Bus Co.* v. *Greater Bridgeport Transit District*, 188 Conn. 417, 423, 449 A.2d 1036 (1982), and *State* v. *Suffield & Thompsonville Bridge Co.*, 81 Conn. 56, 62, 70 A. 55 (1908). No analysis is offered as to how the plaintiffs' contract rights here are akin to a franchise. We would decline to review this claim in any event because it is inadequately briefed. See *State* v. *Prioleau*, 235 Conn. 274, 664 A.2d 743 (1995); *Drabik* v. *East Lyme*, 234 Conn. 390, 662 A.2d 118 (1995).

[13] The plaintiffs had earlier applied for a temporary injunction seeking to prevent the partial destruction of the parking garage that was necessary to make way for the new courthouse facility. In denying that application the trial court, *Austin, J.*, found that the parking agreement did not constitute an easement. In rendering judgment on the trial of the case, the trial court, *Spallone, J.*, adopted the reasoning of Judge Austin in finding that the parking agreement did not constitute an easement.

They argue that these factors support their claim that an easement appurtenant was created. See *Kelly* v. *Ivler*, 187 Conn. 31, 42–43, 450 A.2d 817 (1982); *Leabov* v. *Leninski*, 182 Conn. 611, 614, 438 A.2d 1153 (1981). We agree with the trial court's conclusion that the parking agreement did not create an easement.

The plaintiffs' rights of ingress, egress and parking are much more akin to a license than an easement. "[A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property . . . . Since a license does not convey a possessory interest in land . . . a license does not run with the land to bind a subsequent purchaser." (Citations omitted.) *Clean Corp.* v. *Foston*, 33 Conn. App. 197, 203, 634 A.2d 1200 (1993).[14]

"[A]n easement implies an interest in land, which ordinarily is created by grant and is permanent . . . . In determining whether an interest relating to real property is a lease, easement or license, the intent of the parties is the controlling factor." 25 Am. Jur. 2d, Easements and Licenses § 137 (1996). The parking agreement does not use the language of grant, nor is it executed with the formalities normally associated with the grant of an interest in real property. The word "easement" is not used in the parking agreement. Moreover, the general public has virtually the same rights of ingress and egress as do the plaintiffs. The only significant difference is that the plaintiffs do not pay for the first hour of parking for noncustomers. We note also that the parties created the parking agreement by way of

___

[14] This language is instructive even though the *Clean Corp.* court did not have to decide whether the contracts at issue created licenses. *Clean Corp.* v. *Foston*, supra, 33 Conn. App. 203 n.5. We also note that we did not determine in *Clean Corp.* whether the defendant transferee was bound because he accepted benefits under the contract. Such a claim had not been pled or proven at trial, therefore, the plaintiff could not properly raise it on appeal.

a separate instrument. In the redevelopment agreement between the city and the original redeveloper, there are covenants that run with the land, indicating clearly that the parties were aware of how to create such obligations. The fact that they chose not to do so with respect to the parking garage agreement strongly indicates that there was no intent to create an easement. We conclude that the trial court's finding that the parties did not create an easement is factually and legally correct.

## B

Because we conclude that the parking agreement did not create an easement, the plaintiffs' claims that the easement was taken by the city without payment of just compensation need not be discussed.

## IV

### A

The plaintiffs also claim that One Court Street was liable for breach of the parking agreement. The trial court disposed of that issue in summary fashion by stating that "[t]here has never been an assignment of any contractual rights in the parking agreement and no assumption of any contractual obligations, under said agreement, by One Court Street."

The linchpin of the plaintiffs' claim against One Court Street is that it entered into the agreement with the defendant city to acquire a part of the parking garage with full knowledge of the parking agreement. The plaintiffs rely primarily on *K-Mart Corp.* v. *First Hartford Realty Corp.*, 810 F. Sup. 1316 (D. Conn. 1993). There, the court found a transferee lessor liable to a lessee for performing the terms of the lease because the transferee had *actual* knowledge of the terms of that lease at the time it purchased the property.

In the present case, the trial court made no finding whether One Court Street purchased the property with

notice of the parking agreement and the plaintiffs did not ask the court to articulate with respect to the issue of notice. "It is the responsibility of the appellant to provide an adequate record for review." Practice Book § 4061; see also *State* v. *Arisco*, 39 Conn. App. 11, 15, 663 A.2d 442 (1995). Because the plaintiffs have failed to present an adequate record, we are unable to review their contract claim against One Court Street.

B

The plaintiffs also claim that the trial court improperly granted summary judgment in favor of One Court Street on the equitable estoppel count of the plaintiffs' complaint. The trial court ruled that equitable estoppel may not be pleaded as a cause of action, and, therefore, the count failed to state a cause of action.

"[T]here are two elements which must be established in order to find an estoppel: one party must do or say something that is intended or calculated to induce another into believing in the existence of certain facts and to act upon that belief, and the other party must thereby actually change his position or do some act to his injury which he otherwise would not have done. . . . Estoppel rests on the misleading conduct which results in prejudice to the other and absent such prejudice an estoppel cannot exist." (Citations omitted.) *John F. Epina Realty, Inc.* v. *Space Realty, Inc.*, 194 Conn. 71, 85, 480 A.2d 499 (1984).

We agree with the trial court's conclusion but for a different reason. Our review of the complaint reveals that it completely lacks any factual allegations that One Court Street did anything to mislead the plaintiffs or to induce them into believing in certain facts or to act to their detriment.[15] The conclusory allegations of the

[15] The plaintiffs' principal allegation in the subject count is that "[t]he City, as agent for One Court Street, has bound One Court Street by the terms of the parking agreement and One Court Street is estopped from

complaint are devoid of facts that state the elements of estoppel. The only reference to any facts is an allegation that the city acted, *in part*, as agent for One Court Street without attributing any specific acts to One Court Street. It is proper for us to affirm the trial court's correct result on other grounds if the same result is required by law. *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 530, 677 A.2d 1 (1996); *Brunswick* v. *Inland Wetlands Commission*, 25 Conn. App. 543, 554, 596 A.2d 463 (1991), rev'd on other grounds, 222 Conn. 541, 610 A.2d 1260 (1992).

## V

The plaintiffs' last claim is that the trial court improperly refused to allow them to amend their complaint to add Middletown Realty Associates Limited Partnership as a party plaintiff. The motion is dated September 2, 1994 and the trial was scheduled to commence on September 13, 1994.

"The decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . ." (Citations omitted; internal quotation marks omitted.) *Wicker Mfg. Co.* v. *Currier Electric Co.*, 25 Conn. App. 751, 760, 596 A.2d 1331 (1991); see also *Avon Plumbing & Heating Co., Inc.* v. *Fey*, 40 Conn. App. 351, 356, 670 A.2d 1318 (1996). "We reverse discretionary rulings of the trial court only where such discretion has been abused and has caused prejudice or injustice." *Whalen* v. *Ives*, 37 Conn. App. 7, 20, 654 A.2d 798 (1995). The trial court denied the motion to amend without comment and the plaintiffs did not request an articulation. On this record, we find

denying that the parking agreement is valid and binding as between *the plaintiff and the city.*" (Emphasis added.)

nothing to support the plaintiffs' claim that the denial of this late request to amend was an abuse of the trial court's discretion.

## VI

The city claims three alternate grounds for affirming the trial court's judgment: (1) the applicable statute of limitations bars the plaintiffs' claims; (2) the plaintiffs waived any rights they might have in the parking agreement by not protesting the city's monthly parking agreements that reduced the number of spaces available to the plaintiffs' customers and tenants; and (3) the doctrine of sovereign immunity precludes relief against the city.

The city claims that because the original parking garage provided 565 rather than 600 spaces, there was a breach of the contract when the garage opened in 1965. The city asserts that because the plaintiffs failed to bring an action within six years after the garage opened, any breach of contract claim is now barred by the statute of limitations.[16] The trial court did not make a finding that the city breached the contract by constructing a garage that provided only 565 spaces. Without a predicate finding that the contract was breached, the statute of limitations claim cannot be evaluated because the right of action accrues at the time of the breach. See *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 156, 464 A.2d 18 (1983); *Gaylord Hospital* v. *Massaro*, 5 Conn. App. 465, 467, 499 A.2d 1162 (1985).

The second alternate ground, waiver by the plaintiffs by not protesting the monthly parking arrangements, is without merit. No one disputes the trial court's conclusions that the plaintiffs are not entitled to the exclusive use of any particular spaces. It would be illogical

[16] General Statutes § 52-576 provides that "[n]o action . . . on any simple or implied contract, or in any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

to conclude that the plaintiffs waived their rights by not protesting monthly parking agreements for particular spaces to which they have no claim.

Because the city's claim with respect to sovereign immunity was not briefed, we consider it abandoned. *Gallagher* v. *Gallagher*, 29 Conn. App. 482, 484, 616 A.2d 281 (1992); *Papagorgiou* v. *Anastopoulous*, 29 Conn. App. 142, 148, 613 A.2d 853, cert. denied, 224 Conn. 919, 920, 618 A.2d 527 (1992).

The judgment is reversed only as to the defendant city and the case is remanded for further proceedings to determine whether the city breached the parking agreement and, if so, the damages to which the plaintiffs are entitled.

In this opinion the other judges concurred.