[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this case is whether the defendant Somers Sportsmen's Association, Inc. (Association) has acquired title to property located in the towns of Somers and Stafford by adverse possession.
The plaintiff, Top of the Town LLC (Top of the Town), record owner of the subject property, filed a summary process complaint seeking to evict the Association from a parcel of land where the Association maintains its gun club. Tyrone W. G. Marshall and Thomas V. Marshall, brothers who sold the property to Top of the Town, are also plaintiffs in this action. On February 26, 1998, the Association filed a Second Amended Answer, Special Defenses and Counterclaim, in which it raised twenty special defenses and a nine count counterclaim.[1] Essentially, the Association claims that Top of the Town cannot evict the Association because the Association acquired title to the premises by adverse possession. Top of the Town claims that the Association cannot claim title by adverse possession since it occupies the premises with the consent and permission of the owner.
The relevant history of the subject property is as follows. On November 6, 1954, Robert A. Galbraith acquired title to property known as 79 Denison Road, Somers, containing approximately 45 acres of land. Galbraith also acquired two parcels containing a total of approximately 20 acres in Stafford. These two parcels are contiguous to the Somers property. At the time Galbraith acquired 79 Denison Road, it was improved with a 1 1/2 story wood frame farm house constructed in 1760 and renovated in 1950.
In 1957, Galbraith allowed the Association the use of a portion of the land as a gun club and shooting range. Galbraith was a member of the Association. The permission to use the land given by Galbraith to the Association was not in writing. There was no evidence that Galbraith intended to give the Association any property rights in the subject land. The gun club constructed a firing range on the premises around 1959. In the 1960s additional improvements were made to the range. A trap CT Page 6202 shooting range was constructed in the 1950s and a rifle range and pistol range were later constructed in the 1960s. A turkey shoot has been conducted on the premises since the 1960s. An archery range was also constructed on the premises in the early 1980s.
Galbraith died on November 23, 1967. Galbraith's will created a testamentary trust which included the subject property as an asset of the estate. The trustees of the testamentary trust, as named in the will, were Henry T. Cook and Connecticut Bank and Trust Company (CBT) as co-trustees. Henry T. Cook was also appointed as the executor of the estate. The testamentary trust left the subject premises to Galbraith's mother, Elmira M. Galbraith, during her life. Upon her death, the trust estate was left to Galbraith's sisters, Florence G. Van Schaak and Annabelle G. Marshall, during their lifetime. Upon the deaths of the sisters the trust was left to Galbraith's nephews, Tyrone W. G. Marshall and Thomas V. Marshall. The trust terminated and the subject property was acquired free of the trust by Tyrone W. G. Marshall and Thomas V. Marshall in 1996. No mention of the defendant Association or the gun club operation was made in Galbraith's will.
Although Galbraith died in 1967, the estate was not settled until 1974. At that time, CBT became actively involved in the administration of the trust estate.
During 1996 and 1997, the Association sought to purchase the subject property from Tyrone W. G. Marshall and Thomas V. Marshall for $250,000. The Association proposed leasing the Galbraith home to the Marshall brothers for $700 per month, which would approximate the mortgage payments that the Association would pay to the Marshalls under the mortgage to be taken back by the Marshalls. The Marshalls objected to the high rent of $700 per month and rejected the terms of the sale. The Marshall brothers sold the subject premises to Top of the Town on October 23, 1997, for $250,000, with a rent on the homestead of $300 per month.
We find that Galbraith permitted the Association to occupy his land in Somers without any formal documentation as to the nature of the use or extent of the land to be used.
Although title to Galbraith' s real estate passed to the trust on his death, the premises remained under the control of the Probate Court until all debts and charges of the decedent and the estate had been paid. See Zanoni v. Hudon, 42 Conn. App. 70, 76, 678 A.2d 12 (1996), citingSatti v. Rago, 186 Conn. 360, 365, 441 A.2d 615 (1982). The devisees of the estate had right to possession until the estate was settled. Zanoniv. Hudon, supra, 42 Conn. App. 76. CT Page 6203
When the trustees gained possession of the premises in 1974 following the settlement of the Galbraith estate they, as title holders, took no action to determine the legal status of the Association's use of the premises as a gun club.
The portion of the property that the Association utilizes for the gun club is outlined in red on defendant's exhibit 3. Since 1960, the Association has had access to the gun club property through a dirt road that intersects with Denison Road. The Association maintains a gate and fence at the juncture of Denison Road and the dirt road. A sign stating "Somers Sportsmen's Association, Inc. — Shooting Range — Members Only" is located to the right of the entrance gate. "No trespassing" signs are also located at the gate. Since 1960, the Association has maintained the dirt road, put crushed stone on it, and removed the snow in winter. The Association posted "no trespassing" signs in the woods around the gun club beginning in the 1960s. Defentdant's exhibit 3 outlines in red a boundary line connecting the posted "no trespassing" signs in the woods along a 500 foot radius from the shooting ranges operated by the Association. The purpose of the "no trespassing" signs was to keep people off the property and away from the danger of shooting from the ranges. The boundary shown on defendant's exhibit 3 is based upon state regulations which restrict the shooting of firearms within 500 feet of a building occupied by persons or domestic animals or used for storage of flammable or combustible materials. See Regs., Conn. State Agencies § 26-66-1 (d).
In 1970, the Association had 115 members. The membership today is 220 to 230 members. Each member, prior to 1970, had a key for the lock on the front gate at Denison Road. In 1970, the key lock was changed to a combination lock. After 1970, each member was issued a membership card containing a combination to the lock on the gate at Denison Road. The gun club property is open for Association members' use seven days a week from 10:00 a.m. to sundown. The Association has made considerable improvements to the premises including a rifle range, pistol range, skeet shooting range, turkey shoot range and an archery range. The ranges include substantial structures. A skeet house for skeet shooting has existed on the premises since the early 1960s. A club house was constructed on the premises in the early 1960s. The archery range was constructed in the early 1980s. A rifle range cover was built around 1988. Since sometime in the 1970s or 1980s, a storage trailer has been permanently parked on the premises to store steel rails, clay pigeons, shotgun shells and wads for cleaning guns. Two portable toilets are maintained on the Association property and serviced by the Association. The Association also maintains two generators on the premises to provide electricity for its operation of the range facilities. The members CT Page 6204 maintain the ranges, such as the rifle range, with its berm by mowing the grass and trimming trees and brush.
All of these facts point to the Association acting as an owner of the property with exclusive possession of the premises outlined in red on defendant's exhibit 3, consisting of approximately 23 acres of land in Somers. We find no evidence of possession by the Association of the remainder of the Somers property, including the homestead, or the property located in Stafford.
Until Galbraith's death in 1967, the use of the premises made by the Association was that of a license. "`[A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property. . . . Since a license does not convey a possessory interest in land . . . a license does not run with the land to bind a subsequent purchaser.' (Citations omitted.)." MiddletownCommercial Associates Ltd. Partnership v. Middletown, 42 Conn. App. 426,440, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996), quoting Clean Corp. v. Foston, 33 Conn. App. 197, 203, 634 A.2d 1200
(1993).
A license, which is personal to the grantor of the license, terminates with the death of the grantor. See Prince v. Case, 10 Conn. 375, 382
(1835). In the present case, the license or permission to use the premises given by Galbraith to the Association terminated on the date of Galbraith's death on November 23, 1967. Thereafter, the Association no longer occupied the subject premises with the permission of the owner. When the trustees of the Galbraith trust took possession of the subject property, they made no effort to evict the Association nor convert the relationship to a possessory interest in the land such as a lease. On Galbraith's death, it was incumbent upon his executor and subsequently his trustees to preserve and protect the trust assets. See 6 Powell On Real Property § 42.03[7], p. 42-29. CBT[2], acting through its trust officer, assumed that the Association was occupying the subject premises as tenants at will. However, no authority was given to the Association by the trustees to continue their occupation of the subject property, whether by permission or as tenants at will, from 1974 when the trustees took possession of the estate assets until the termination of the trust in 1996. The employees of CBT, charged with managing the trust assets, periodically visited the Galbraith house. Only twice in 22 years of the trust's existence did CBT employees visit the interior of the subject land. Although the trustees charged Florence Van Schaak rent for the occupation of the homestead, they made no effort to charge rent to the Association for its use and occupation of the trust property. As a matter of fact, the trust officer complained when he received the property tax bill in 1984 showing that the trust was being taxed for CT Page 6205 buildings constructed by the Association on the premises. The trust officer appeared before a town board contending that the Association should be billed for the taxes on the Association property. The town board complied with this request. From 1984 to the date of the termination of the trust, the Association paid the property taxes on its improvements to the property. Neither the trust officer nor CBT ever undertook to define the relationship of the Association with CBT as trustee. Although the trust officer was under the assumption that the Association was in possession with permission, he never required that the permission be acknowledged by the Association. The trust officer never met with the officers of the Association to discuss the Association's use of the Galbraith property.
Top of the Town's claim, simply put, is that it is the owner of record title and that, as owner of record title, it seeks to evict the Association from possession of its property. The evidence in this case clearly shows that Top of the Town is the owner of record title. SeeClark v. Drska, 1 Conn. App. 481, 488-89, 473 A.2d 325 (1984). The Association, on the other hand claims that its possession, which is adverse to the plaintiff, entitles it to judgment of ownership. SeeKonikowski v. Everson, 42 Conn. App. 658, 659-60, 680 A.2d 1366 (1996).
"The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." (Internal quotation marks and citations omitted). Kramer v. Petisi, 53 Conn. App. 62,67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). Adverse possession must be proved by clear and convincing evidence. Id.
The concept of adverse possession is founded upon the fact that the party claiming adverse title, claims it as a matter of right. See Kramerv. Petisi, supra, 53 Conn. App. 71. Where a party in possession "recognizes or admits title in another, either by declaration or conduct, [the possession] is not adverse to the title of such other. . . . Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it. . . . Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse use starts the clock anew." (Citations omitted; internal quotations marks omitted). Id.
The Association's possession of the premises was originally given by permission of the owner of the land, Robert Galbraith. However, as we have previously stated, that permission to use Galbraith's land CT Page 6206 terminated with the death of Galbraith. Following this termination of permission, we find, based upon the clear and convincing evidence stated above, that the possession of the premises by the Association was open, visible, exclusive and without license consent of the trustees once the trustees took title and possession to the subject premises in 1974. Once the trustees took title, it would have been incumbent upon the trustees, as fiduciaries, to take full control of the assets of the trust, to take all steps necessary to inventory the assets, and in this case to inquire as to whether the property is being leased, or being used by anyone inconsistent with the ownership of the land. See General Statutes §45a-234 (25); Camp v. Camp, 5 Conn. 291 (1824). In Camp, a tenant at will remained on the premises after the death of the landlord for a period of fifty-seven years. The Camp court recognized the universal rule that a tenant is estopped from denying the title of his landlord so long as the tenant remains in possession of the premises. Camp v. Camp, supra, 5 Conn. 300, 301. "[A] person intrusted with possession of property, shall not betray that possession." Id. The court in Camp
considered the landlord's death to be the termination of the lease. The landlord's heirs made no claim of title, nor did they demand payment of rent or profits from the land. On this basis the court in Camp concluded that the former tenant, an ecclesiastical society, was the owner of the property by adverse possession, because it possessed the property for over fifteen years as its own with undisturbed possession. Id., 302, 303.
As we have previously discussed, in this case, CBT's trust officer was only concerned that the trust not pay the real estate taxes on the improvements to the land made by the Association. CBT, as trustee, had title, the right to possession, and the power of management and control over the trust property to make it productive and safe. Second ExeterCorp. v. Epstein, 5 Conn. App. 427, 430, 499 A.2d 429 (1985), cert. denied, 198 Conn. 802, 502 A.2d 932 (1986). A wrongful interference with these rights and powers by the Association would have given CBT the right to seek redress for the Association's continued occupation of the subject premises. Id. However, CBT did nothing to remove the Association from the land or interfere with the Association's use and expansion of the use of the subject premises during the 22 years that CBT was trustee of the premises. Since the death of Galbraith in 1967, the Association has been in possession of the premises, using it as their own, openly, for a period of approximately thirty years.
The Association's 1997 offer to purchase 65 acres of land from the prior record owners, the Marshalls, included the 23 acres of the Association's gun club. We do not view this as a recognition of title in the Marshalls, but rather an attempt to protect what the Association already considered was theirs by acquiring more land around the gun club that would protect the club from encroaching residential developments, CT Page 6207 which could reduce the viability of the shooting ranges and gun club. The offer to purchase the whole 65 acres rather than the 23 acres encompassing the gun club does not rise to the level of recognition of ownership in the Marshalls for the purpose of defeating the claim of adverse possession by the Association, which we have found spans thirty years of open, exclusive, and hostile use.
Accordingly, judgment may enter in favor of the defendant Association on the plaintiffs' summary process complaint. Judgment may enter in favor of the defendant Association on counts one (adverse possession) and two (quiet title) of its counterclaim, but only as to the approximately 23 acre portion of the property outlined in red on defendant's exhibit 3, including all structures within that boundary, not as to the entire 65 acres of property claimed in the counterclaim. With respect to the remainder of the property, approximately 42 acres, judgment may enter in favor of the plaintiffs. Judgment may enter in favor of the Association on counts five, six and seven of the Association's counterclaim (declaratory judgment that deeds are void), but we will declare the deeds void only as to the approximately 23 acre portion of the property outlined in red on defendant's exhibit 3, and any structures contained within that boundary. The deeds are not void insofar as they convey the remaining 42+/- acres of the property, including the homestead. Judgment may enter in favor of the plaintiffs on counts three (prescriptive easement) and four (constructive trust) of the counterclaim in that counts three and four appear be claims of right to the property on alternative theories to counts one and two, and the court has entered already partial judgment in the Association's favor on counts one and two. Judgment may enter in favor of the plaintiffs on counts eight (reformation) and nine (CUTPA violation) of the counterclaim, in that the Association has not met its burden of proving its claims regarding alleged knowing misrepresentations and false statements in these counts. This judgment entitles the Association to the relief sought in paragraphs 1, 2, 3, 5, 6, 7 and 11 of the claim for relief, in accordance with, and to the extent of, the court's judgment with respect to the counts of the counterclaim stated above. The Association is not entitled to the relief sought in paragraphs 4, 8, 9, 10 and 12 of the claim for relief.
This judgment shall enter without costs to either party.
Arnold W. Aronson Judge Trial Referee