[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action wherein the plaintiff alleges the breach of a license agreement entered into by the respective parties. The plaintiff, Peter Vartelas, Trustee, is the trustee and beneficiary of a trust agreement which has as an asset thirteen acres of property located on Division Street, in Derby, Connecticut. The defendant, Bartomeli Company, Inc. is a Connecticut corporation in the construction business. In May, 1998 the defendant submitted a bid proposal to the state of Connecticut, department of transportation for the reconstruction of Division Street, located in Ansonia and Derby. The proposal was detailed as to the work, materials and services which were required to be provided by the bidder to the department of transportation as part of the project. Included in the proposal, the bidder was required to provide to the department, for use by its engineers and employees overseeing the project, a construction field office and other services connected with the field office. The department of transportation was to pay for the construction and use of the field office and for the services related thereto. The field office and the related services were to be provided for the sum of one thousand five hundred dollars per month. The provision as to the field office was just one small facet of the construction project, which was to cost in excess of one million, nine hundred thousand dollars. The defendant was awarded the contract for the reconstruction of the road.
On August 4, 1998 the defendant signed a contract with the department of transportation for the project. A portion of the contract dealt with the requirements incident to the defendant providing the construction field office for use by the department's engineers. The contract provided that the office must be provided for the duration of the work and, possibly, for ninety days after completion.[1] The office had to be located convenient to the work site but there was no requirement as to its exact location.[2] The exact specifications for the construction of the office were provided. The defendant was to provide furniture and office equipment,[3] telephone service, fax and computer service. The defendant was also to provide, at its expense, insurance, parking, snow removal, trash removal and exterior lighting. The contract explicitly provided that the sum paid to the defendant for the field office was for "all material, equipment, labor, utility services and work incidental thereto." The contract also provided that "ownership and liability [of] the office quarters shall remain with the [defendant]." CT Page 4804
The defendant then sought a suitable location convenient to the work site for the storage of his equipment and placement of the field office. In the summer of 1998, the plaintiff and the defendant negotiated concerning the defendant's use of the property owned by the plaintiff on Division Street. On September 1, 1998 the plaintiff and defendant entered a written "non exclusive license agreement" for the use of the property.[4] The license agreement was to run from September 1, 1998 through August 31, 1999. The defendant was to pay the sum of one thousand dollars per month for the license. Although the agreement provided that the license was "for the sole purpose of storage of [the defendant's] construction material, equipment, and supplies being used . . . in conjunction with [the] pending construction project," the plaintiff knew that the defendant was going to construct the field office, as well. The plaintiff visited the property regularly during construction, saw the field office and spoke with department of transportation employees often, including one John Russell. Although the plaintiff was aware that department of transportation employees were on the property and were using the field office, he did not realize that construction of the field office for the department was required under the defendant's contract with the department and that a portion of the funds paid to the defendant under the contract were for services provided in connection with the field office. The plaintiff, at no time prior to late summer, 1999, objected to the use of the field office.
The license agreement provided, in paragraph six, that "[l]icensee shall not assign its rights and privileges under this agreement without the express written consent of Licensor, which consent may be unreasonably withheld." Paragraph seven of the agreement repeats that the agreement creates a license only and states that the defendant did not obtain any interest or estate of any kind in the property. Neither the plaintiff nor the defendant discussed either paragraph of the license agreement prior to signing.
Construction proceeded without incident until the summer of 1999. At that time, incidental to a disagreement between the plaintiff and an adjacent property owner concerning dumping on the neighbor's property, the plaintiff learned that the defendant was being paid by the department for use of the field office and for the services related thereto. Shortly thereafter, the term of the license expired and the defendant timely vacated the premises. The defendant then provided the department with the required field office at an alternate location. The defendant paid all of the sums due under the license agreement. The plaintiff then filed this action.
The complaint is in two counts.[5] The first count alleges a breach CT Page 4805 of paragraph six of the license agreement which prohibited assignment of the license without the consent of the plaintiff. The plaintiff's position is that the defendant, by allowing the department of transportation to use the field office and by accepting payment therefore, in effect assigned the license to the department. The second count alleges a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, (CUTPA). The plaintiff's position is that the defendant knew that it was going to violate the license agreement prior to its signing, in that it knew that the agreement would be assigned to the department. The plaintiff feels that the defendant's actions were unfair and deceptive practices under the act.
The defendant has answered, denying the allegations in both counts. The defendant's position is that the use of the field office by the department of transportation, as part of the construction project, was not an assignment of the license agreement. The defendant also raised two special defenses of waiver and estoppel, asserting that the plaintiff knew that the department was going to use the field office and, by his actions, authorized its continued use.[6] The court heard testimony and received exhibits from both parties.
For the plaintiff to recover, under either count, the court must find that the defendant assigned his rights to the plaintiff's property to the department of transportation in violation of paragraph six of the license agreement. The plaintiff has the burden of proving that there was an assignment of the license agreement. Galluzzo v. Mannino, 110 Conn. 507,513, 148 A. 347 (1930).
"Unlike a lease, a license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property." Clean Corp. v. Foston, 33 Conn. App. 197, 203, 634 A.2d 1200
(1993); Middletown Commercial Associates Limited Partnership v. City ofMiddletown, 42 Conn. App. 426, 440, 680 A.2d 1350, cert. denied,239 Conn. 939, 684 A.2d 711 (1996); State v. Allen, 216 Conn. 367, 380,579 A.2d 1066 (1990). "A license is the permission to do something on the land of another." J.W. Bruce J.W. Ely, Jr., The Law of Easements and Licenses in Land (2001), General Characteristics, § 11-1, p. 11-1 to11-3. Both parties agree that the defendant only had a license to use the plaintiff's property on Division Street. This is also clear from paragraph seven of the license agreement. Although the express wording of the license agreement provided that it was for the storage of the defendant's construction material, equipment and supplies, the plaintiff knew that a construction field office would also be placed on the site. The plaintiff often visited the site, saw the field office and expressed no objection until late summer, 1999. The court finds that the presence of the field office itself was not a violation of the license. The court suspects CT Page 4806 that, although the plaintiff now objects to the presence of the field office itself, there would be no objection to the presence of the structure if the defendant personally used the field office.
The plaintiff asserts that the defendant assigned his rights under the license agreement to the department of transportation in violation of paragraph six of the agreement. The court finds, however, that the defendant and the department of transportation never intended for there to be an assignment of the defendant's license rights. In addition, no legal assignment of the license could have taken place even if an assignment was intended.
"Licenses are generally not assignable by the licensee because they are personal in nature and are thus limited to the original parties.[7] A few jurisdictions apparently adhere to the position that an attempted assignment terminates a license, an anachronistic view that has little to recommend it. An attempted assignment should simply be treated as a nullity." J.W. Bruce J.W. Ely, Jr., The Law of Easements and Licenses in Land (2001), Assignability, § 11:4, p. 11-15 to 11-16. This court need not decide whether any attempted assignment by the defendant and the department of transportation acted to terminate the license or whether it should be seen as a nullity. The court finds that the defendant and the department of transportation did not even intend to attempt to assign the license.
"A valid assignment transfers to the assignee exclusive ownership of all of the assignor's rights to the subject assigned and extinguishes all of those rights in the assignor." Mall v. LaBow, 33 Conn. App. 359, 362,635 A.2d 871 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1208 (1994). "[A]m assignment ordinarily carries with it all of the rights, remedies and benefits which are incidental to the thing assigned . . ." NationalLoan Investors v. Heritage Square Associates, 54 Conn. App. 67, 75,733 A.2d 876 (1999). "In Connecticut . . . an assignee stands in the shoes of the assignor." Id., 73. "[T]he intent of the parties is the controlling factor" in determining whether an assignment occurred.Middletown Commercial Associates Limited Partnership v. City ofMiddletown, supra, 42 Conn. App. 440. The court finds that the actions of the defendant and the department of transportation show neither an assignment of the license rights nor even an intent to attempt to assign the license rights.
The contract between the defendant and the department of transportation, which would purportedly be the basis of any claim of assignment of the license, was executed prior to the license agreement for the plaintiff's property. It, therefore, never mentions the plaintiff's property and is totally silent as to the location of the field CT Page 4807 office, other than it should be "convenient to the work site." Clearly there could have been no intention to assign license rights where none existed at that time. In addition, when the term of the defendant's license period expired, the defendant merely moved the field office to another location. Under the contract, the field office could have been located on any land to which the defendant had access.
Rather than evidencing an intention that the department of transportation should take the place and stead of the defendant, necessary even for an attempted assignment, the contract provides that "ownership and liability [of] the office quarters shall remain with the contractor." The department of transportation was not interested in obtaining any of the defendant's rights and assuming his obligations under the license agreement. The defendant was also not interested in transferring its rights and obligations under the license to the department of transportation. The rights and obligations of the defendant under the license agreement were not extinguished because the department of transportation's engineers used the field office. The defendant still remained liable to the plaintiff under the license agreement.
It is important to make clear what is not present under the facts of this case. This is not a situation where the defendant, with rights to property under a license agreement, attempts to "sublicense" or "rent" the property to a third party for a profit in violation of a license agreement. In this case, the defendant continued to be the licensee but only allowed the department of transportation to use a portion of the premises under his obligation imposed by the construction contract. Use of the property was necessary in furtherance of the contract so that the department of transportation could oversee the project. Payment to the defendant was for his furnishing the construction field office, material, equipment, labor, utility services and work incidental thereto, not, per se, for use of the licensed property.
The plaintiff has pleaded, in count one of the complaint, that the defendant breached the license agreement by assigning his rights therein to the department of transportation. As there can be no valid assignment of license rights, the defendant could not have, in fact, assigned his rights in violation of the agreement. At best, the defendant could have "attempted" to assign his license rights. The court finds, however, that not even an attempted assignment has been proven. The court, therefore, finds for the defendant on the first count of the complaint. As proof of an assignment of the license rights is also required for recovery under the second count of the complaint, the court also finds for the defendant on the second count. Judgment shall enter for the defendant.
THE COURT CT Page 4808
CURRAN, J.